

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,　　　　　：　INFORMATION

　　　　　-v.-　　　　　　　　　　　　：　10 CRIM 334

FEDERICO HERNANDEZ,　　　　　　　　：

　　　　　Defendant.　　　　　　　　：

- - - - - - - - - - - - - - - - -x

### COUNTS ONE THROUGH FIVE
(Subscribing to False Individual Tax Returns)

The United States Attorney charges:

#### Introduction

1.  At all times relevant to this Information, the Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States.

2.  At all times relevant to this Information, UBS AG ("UBS") was a corporation organized under the laws of Switzerland. UBS, directly and through its subsidiaries, operated a global financial services business. Among other things, UBS provided banking, wealth management, and asset management services all over the world, including to United States taxpayers living in the Southern District of New York.

3.  Beginning at least in or about 2000, UBS, through various of its employees, engaged in a scheme to assist United States taxpayers who had accounts at UBS in Switzerland in

concealing the existence of those accounts, and the income earned in those accounts, from the IRS.

4. Among the means by which UBS and others assisted certain United States taxpayers who had accounts at UBS in concealing the existence of the UBS accounts, and the income earned in UBS accounts, from the IRS, were the following:

a. Using sham corporations and foundations formed under the laws of offshore jurisdictions to conceal, from the IRS, the ownership by United States taxpayers of certain UBS accounts;

b. Accepting and including in UBS's account records IRS Forms W8-BEN (Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding) and UBS's equivalent forms that falsely stated that sham offshore corporation and foundations were the beneficial owners of certain UBS accounts when, in fact, as UBS and the United States taxpayers well knew, United States taxpayers were the beneficial owners of those UBS accounts.

### The Defendant

5. Beginning in or about 1990, FEDERICO HERNANDEZ, the defendant, lived in New York, New York. On or about March 26, 1998, HERNANDEZ became a Lawful Permanent Resident of the United States, which status required him to file U.S. tax returns that reported his worldwide income, among other things. On or

about September 19, 2008, HERNANDEZ became a citizen of the United States.

6.  In or about March 1989, FEDERICO HERNANDEZ, the defendant, earned a Management Degree in Business Administration from Universidad Metropolitana, in Caracas, Venezuela.

7.  From in or about 1990 to in or about 1998, FEDERICO HERNANDEZ, the defendant, worked as an investment portfolio manager and trader for financial services companies in New York, New York.

8.  In or about 1998, FEDERICO HERNANDEZ, the defendant, established a financial services company called 2020 Emerging, Inc. From in or about 1998 through in or about 2009, HERNANDEZ owned, operated, and managed 2020 Emerging, Inc., and served as its President. The principal place of business of 2020 Emerging, Inc. was New York, New York. Through 2020 Emerging, Inc., HERNANDEZ provided financial advice to a number of wealthy individuals. In a resume that HERNANDEZ provided to UBS, HERNANDEZ stated that he provided investment management advice, corporate tax advice, and advice concerning offshore trusts and foundations.

### Hernandez's UBS Accounts

9.  FEDERICO HERNANDEZ, the defendant, maintained at least the following accounts at UBS (collectively, the "Hernandez UBS Accounts"):

Hernandez's 2020 Emerging Account

a. In or about April 2001, HERNANDEZ opened and caused to be opened a UBS account in the name of 2020 Emerging, Ltd. ("2020 Emerging Account"), a nominee corporation formed under the laws of the British Virgin Islands. At the time HERNANDEZ opened the 2020 Emerging Account, he instructed UBS to retain and hold all correspondence relating to the account at UBS in Switzerland, where such correspondence would remain outside the reach of United States law enforcement authorities. HERNANDEZ paid a fee for this service. HERNANDEZ signed the account opening document for this account on or about April 4, 2001.

b. At all times relevant to the Information, HERNANDEZ was the sole beneficial owner of the 2020 Emerging Account. Indeed, on or about October 14, 2001, and again on or about December 17, 2004, HERNANDEZ signed UBS documents confirming that he was the "beneficial owner" of the account. The document that HERNANDEZ signed on December 17, 2004 listed HERNANDEZ's home address in New York, New York.

c. On or about April 4, 2001, and again on or about December 4, 2006, HERNANDEZ signed UBS documents listing him as the sole authorized signatory for the 2020 Emerging Account.

d. On or about April 4, 2001, HERNANDEZ signed an IRS Form W-8BEN in which he falsely certified, under penalty of perjury, that 2020 Emerging, Ltd. was the sole beneficial owner of the 2020 Emerging Account, when, in fact, as HERNANDEZ well knew, he was the sole beneficial owner of the 2020 Emerging Account. On this form, HERNANDEZ also falsely certified that the "beneficial owner" of the account was not a "U.S. person." The form defined "U.S. person" to include "a resident alien individual," which HERNANDEZ was, starting in or about 1998.

e. On or about January 18, 2005, HERNANDEZ signed UBS's "Substitute Form W-8BEN" in which he falsely certified, under penalty of perjury, that 2020 Emerging, Ltd. was the "beneficial owner" of the 2020 Emerging Account "according to U.S. tax law."

### Hernandez's Pondbridge Account

f. On or about July 28, 2006, HERNANDEZ signed an account opening document for a new UBS account in the name of Pondbridge Corp. ("the Pondbridge Account"), a nominee corporation formed under the laws of Panama, and thereby caused the account to be opened. That same day, HERNANDEZ signed a UBS document certifying that he was the sole beneficial owner of the account, and listed his home address in New York, New York. Also on that day, HERNANDEZ signed a document listing him as the sole authorized signatory for the Pondbridge Account.

g. On or about July 28, 2006, and again on December 6, 2006, HERNANDEZ signed UBS's "Substitute Form W-8BEN" falsely certifying, under penalty of perjury, that Pondbridge Corp. was the "beneficial owner" of the Pondbridge Account "according to U.S. tax law."

h. The year-end account balances in HERNANDEZ's 2020 Emerging and Pondbridge Accounts were approximately as follows:

| Account | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|---|
| 2020 Emerging | $478,681 | $652,579 | $624,352 | $1,912,713 | $5,062,900 | $6,760,402 | $95,703 |
| Pondbridge | N/A | N/A | N/A | N/A | N/A | $2,038,994 | $5,491,137 |
| **Totals** | $478,681 | $652,579 | $624,352 | $1,912,713 | $5,062,900 | $8,799,396 | $5,586,840 |

i. HERNANDEZ and UBS agreed that all mail relating to the HERNANDEZ UBS Accounts would not be mailed to HERNANDEZ in New York, New York, but would be held at UBS in Geneva so that HERNANDEZ could review this mail when he traveled to Geneva. UBS performed this service in exchange for a fee.

**UBS Documents Concerning Hernandez**

10. On or about June 30, 2005, HERNANDEZ's UBS client advisor signed a UBS document that listed the home address of FEDERICO HERNANDEZ, the defendant, in New York, New York; described 2020 Emerging Ltd. as "an offshore vehicule [sic]"; and listed HERNANDEZ's business address in New York, New York.

6

## HERNANDEZ's False Tax Returns

11. Citizens and Lawful Permanent Residents of the United States who have income in excess of a threshold amount in any one calendar year are obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the IRS. On such a return, United States taxpayers are obligated to report their worldwide income.

12. For calendar years 2004 through 2008, FEDERICO HERNANDEZ, the defendant, filed Forms 1040 with the IRS after signing them under penalties of perjury. For each of these years, HERNANDEZ's returns were prepared by a professional tax preparer ("Tax Preparer A"). On each of these returns, HERNANDEZ reported his adjusted gross income and total tax due, among other things. However, HERNANDEZ willfully failed to disclose to Tax Preparer A for at least HERNANDEZ's 2004 through 2008 tax returns the existence of the HERNANDEZ UBS Accounts, and the income earned in those accounts, during the relevant years. Accordingly, for each of these years, HERNANDEZ willfully failed to report income, including interest, earned in the HERNANDEZ UBS Accounts. For 2004 to 2008, these amounts were at least as follows:

| Calendar year | Adjusted Gross Income Reported on Form 1040 | Total Tax Reported on Form 1040 | Unreported Interest Income | Additional Federal Tax Due on Interest Income |
|---|---|---|---|---|
| 2004 | $43,162 | $1,323 | $6,690 | 0 |
| 2005 | $114,530 | $20,446 | $29,139 | $8,995 |
| 2006 | $142,112 | $30,201 | $71,753 | $22,456 |
| 2007 | $94,729 | $5,581 | $167,076 | $52,612 |
| 2008 | $109,150 | $1,881 | $3,177 | $360 |
| Totals | $503,683 | $59,432 | $277,835 | $84,423 |

13. Separate and apart from the failure of FEDERICO HERNANDEZ, the defendant, to report interest income that he earned in the HERNANDEZ UBS Accounts, for calendar years 2004 through 2008, he also willfully failed to report other income, including dividend income, earned in those accounts.

14. In addition, on Schedule B of Form 1040, a U.S. taxpayer must indicate whether, at any time during the relevant calendar year, the taxpayer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the taxpayer answers that question in the affirmative, then he or she must indicate the name of the country in which the account is located.

15. For calendar years 2004 through 2006, FEDERICO HERNANDEZ, the defendant, failed to complete Schedule B of Form 1040. For calendar years 2007 and 2008, HERNANDEZ completed

8

Schedule B, but he falsely stated that he did not have an interest in, or a signature or other authority over, a financial account in a foreign country, when, in truth and in fact, as HERNANDEZ well knew, he was the sole beneficial owner of the HERNANDEZ UBS Accounts during those years.

### Hernandez's Failure To File FBARs

16. Separate and apart from the obligation to file Forms 1040, United States taxpayers who have a financial interest in, or signature or other authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular year are required to file with the IRS a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR"). Indeed, on Schedule B of Form 1040, U.S. taxpayers who have an interest in, or signature or other authority over, financial accounts in foreign countries are specifically directed to refer to IRS instructions relating to the FBAR. The FBAR for any particular year is required to be filed on or before June 30 of the following year. The FBAR requires that the filer identify the financial institution with which the financial account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

17. By virtue of his beneficial ownership and signature authority over the HERNANDEZ UBS Accounts, FEDERICO HERNANDEZ, the defendant, was required to file FBARs for calendar years 2001 through 2008, but he failed to do so.

**Statutory Allegations**

18. On or about the filing dates set forth below, in the Southern District of New York and elsewhere, FEDERICO HERNANDEZ, the defendant, unlawfully, willfully, and knowingly did make and subscribe U.S. Individual Income Tax Returns, Forms 1040, for the calendar years set forth below and filed on or about the dates indicated below, which returns contained and were verified by the written declaration of HERNANDEZ that they were made under penalties of perjury, and which returns HERNANDEZ did not believe to be true and correct as to every material matter, in that HERNANDEZ: (a) failed to report income received by him in one or more bank, securities, and other financial accounts at UBS, including interest; and (b) failed, on Schedule B, Part II, line 7a, to report that he had an interest in, or a signature or other authority over, bank, securities, and other financial accounts in Switzerland, whereas HERNANDEZ then and there well knew and believed that he had received income in one or more

accounts at UBS and had an interest in, or a signature or other authority over, bank, securities, and other financial accounts in Switzerland:

| Count | Calendar year | Approximate Date of Filing |
|---|---|---|
| One | 2004 | March 14, 2005 |
| Two | 2005 | March 8, 2006 |
| Three | 2006 | February 28, 2007 |
| Four | 2007 | March 5, 2008 |
| Five | 2008 | February 9, 2009 |

(Title 26, United States Code, Sections 7206(1);
Title 18, United States Code, Section 2.)

_____
PREET BHARARA
United States Attorney